**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DAVID JAMES SCHROEDER,          ) Case No. EDCV 13-1633-JPR
                                )
                Plaintiff,      )
                                )
         vs.                    ) **MEMORANDUM OPINION AND ORDER**
                                ) **AFFIRMING COMMISSIONER**
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security,                       )
                                )
                Defendant.      )
                                )

I.   **PROCEEDINGS**

     Plaintiff seeks review of the Commissioner's final decision
denying his application for Social Security disability insurance
benefits ("DIB").  The parties consented to the jurisdiction of
the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).
This matter is before the Court on the parties' Joint
Stipulation, filed July 3, 2014, which the Court has taken under
submission without oral argument.  For the reasons stated below,
the Commissioner's decision is affirmed and judgment is entered
in her favor.

## II.   BACKGROUND

Plaintiff was born on June 3, 1971. (AR 47, 155, 208.) He completed the 12th grade and worked as an outside salesperson for Frito-Lay Inc., a floor salesperson for Home Depot, and an independent contractor providing inventory, office, and handyman services. (AR 48-49, 223-24, 236-39.)

Plaintiff filed an application for DIB on March 22, 2010. (AR 155-56.) He alleged that he had been unable to work since January 16, 2010, because of "[b]ullous emphysema, spontaneous pneumothorax, stress," and depression.[1] (AR 208, 222.) He later added allegations of anemia, high blood pressure, and sleep apnea. (AR 345.) After his application was denied, he requested a hearing before an Administrative Law Judge. (AR 103-04.)

A hearing was held on April 3, 2012. (AR 43-80.) Plaintiff, who was represented by counsel, testified, as did a vocational expert. (Id.) In a written decision issued June 1, 2012, the ALJ determined that Plaintiff was not disabled. (AR 21-36.) On July 22, 2013, the Appeals Council denied his request for review. (AR 1-6.) This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and

---

[1] Bullae are large air sacs formed of destroyed alveoli. See Surgery, Am. Lung Ass'n, http://www.lung.org/lung-disease/copd/treating-copd/surgery.html (last visited Nov. 23, 2014). If bullae become very large, they can interfere with breathing. Id. Pneumothorax is a collapsed lung. See Collapsed Lung (Pneumothorax), MedlinePlus, http://www.nlm.nih.gov/medlineplus/ency/article/000087.htm (last updated July 20, 2013).

supported by substantial evidence based on the record as a whole. Id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).   Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.   Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).   It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).   To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."   Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).   "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.   Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months.   42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled.   20 C.F.R.

3

§ 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied.  § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied.  § 404.1520(a)(4)(ii).  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 404.1520(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform his past work; if so, the claimant is not disabled and the claim must be denied.  § 404.1520(a)(4)(iv).  The claimant has the burden of proving he is unable to perform past relevant work.

---

[2] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  § 404.1545; Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

Drouin, 966 F.2d at 1257.   If the claimant meets that burden, a prima facie case of disability is established.   Id.   If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing the claimant is not disabled because he can perform other substantial gainful work available in the national economy.   § 404.1520(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis.   § 404.1520; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 16, 2010.   (AR 23.) At step two, the ALJ concluded that Plaintiff had severe impairments of "bulbous emphysema," "spontaneous pneumothorax," and depression.   (Id.)   At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a Listing, including specifically Listing 12.04.   (AR 24-26.)   At step four, she found that Plaintiff had the RFC to perform light work[3] but with additional restrictions:

> [T]he claimant can lift and carry up to ten pounds.   The
> claimant can sit for about six hours and stand/walk for
> about two hours in an eight-hour workday.   The claimant

---

[3] "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."   § 404.1567(b).   "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."   Id. A person who can do light work can generally also do sedentary work.   Id.

would need to alternate positions at one-hour intervals from one to five minutes at the workstation. The claimant can never climb ladders, ropes or scaffolds, but may occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. The claimant has no [restrictions] on the use of the hands for fine or gross manipulation. The claimant cannot work at unprotected heights, or have concentrated exposure to extremely cold or hot temperatures and can have no more than moderate exposure to pulmonary irritants such as dust, gasses, and odors. The claimant is able to sustain concentration and attention, persistence and pace for at least two-hour blocks of time in a normal workday. The claimant needs a non-public work environment, and is able to respond appropriately to co-workers and supervisors. The claimant is able to understand, remember and carry out simple and detailed tasks. The claimant would be off tasks 10 percent of the workday due to interference from his psychologically based symptoms.

(AR 26-27.) Based on the VE's testimony, the ALJ determined that Plaintiff was unable to perform his past relevant work but could perform jobs existing in significant numbers in the national and regional economies. (AR 34-36.) Thus, the ALJ found that Plaintiff was not disabled. (AR 36.)

**V.   DISCUSSION**

Plaintiff argues that the ALJ failed to properly consider the medical evidence of Plaintiff's physical and mental limitations in formulating the RFC, erred in assessing

Plaintiff's credibility, and improperly relied on the VE's testimony. (J. Stip. at 5.) Because Plaintiff's statements about his activities and limitations informed much of the ALJ's analysis, the Court first addresses their credibility.

A.   The ALJ Did Not Err in Assessing Plaintiff's Credibility

Plaintiff contends that the ALJ "failed to articulate legally sufficient reasons for rejecting [his] testimony." (J. Stip. at 33; see generally id. at 28-33, 36-38.) He is wrong.

1.   Applicable law

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (internal quotation marks omitted). If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the

7

degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original). When the ALJ finds a claimant's subjective complaints not credible, the ALJ must make specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834; Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014).[4]

In assessing a claimant's credibility, the ALJ may consider (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); Smolen, 80 F.3d at 1284. If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas, 278 F.3d at 959.

---

[4] In Ghanim, the Ninth Circuit noted that its precedent was inconsistent on whether the "clear and convincing" standard does not apply only when an ALJ makes an "actual finding of malingering" or also when the record merely contains "evidence of malingering." 763 F.3d at 1163 n.9. The Ninth Circuit declined to decide the issue, however. Id. Here, as explained below, because the ALJ specifically found that Plaintiff exaggerated his symptoms, the conflict has no bearing on the outcome.

## 2. Analysis

The ALJ noted that although Plaintiff "appeared genuine," his "allegations regarding the severity of his symptoms and limitations are greater than expected in light of the objective evidence of record." (AR 29.) Indeed, the ALJ found that they were "far in excess of the objective medical and other evidence of record." (Id.) She noted that examining doctor Kent Jordan shared this impression, as he observed that Plaintiff "appeared to highly embellish psychiatric symptomology" and that "[t]here was a very large discrepancy between psychiatric symptoms reported and those observed during this evaluation." (Id. (quoting AR 591); see also AR 595.) For instance, although Plaintiff stated that he could perform a desk job but would have difficulty sitting still (AR 591; see also AR 57 (Plaintiff testifying that he could not perform clerical work only because "I just don't like to sit still"), 595 (same), 592 (Plaintiff telling Dr. Jordan in July 2010 that he could perform clerical work)), Dr. Jordan observed that Plaintiff "sat calmly in his chair throughout the 40 minute evaluation" (AR 595 (noting "evidence of only mild transient anxiety that did not impair emotionally neutral functioning"); see also AR 54 (when asked by ALJ whether he had "[a]ny difficulty sitting for prolonged periods of time," Plaintiff responded, "No, not sitting. I'm fine sitting.")). (See AR 29.)

The ALJ's finding of malingering relieved her of the burden of providing clear and convincing reasons for discounting Plaintiff's credibility. See Lester, 81 F.3d at 834; Bagoyan Sulakhyan v. Astrue, 456 F. App'x 679, 682 (9th Cir. 2011).

Nonetheless, the ALJ gave clear and convincing reasons for doing so.

In addition to relying on Dr. Jordan's findings, the ALJ discounted Plaintiff's claims of disabling depression and anxiety based on treating psychiatrist Robert Marozas's reports that Plaintiff generally responded well to medication and was stable and improving with treatment. (AR 30; see AR 716-19, 722, 826-30.) Plaintiff had reported that after beginning medication he felt much better, with less anxiety. (AR 31; see AR 722.) That Plaintiff responded well to conservative treatment was a valid basis to discount his allegations of disabling mental-health impairments. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (upholding credibility determination based in part upon response to conservative treatment).

The ALJ further noted that although Plaintiff alleged disability in part because of chest pain, he had been able to return to work following treatment for spontaneous pneumothorax in October 2008, and he continued to work through January 2010 despite complaints of chest pain and fatigue, suggesting that his chest pain was not as limiting as Plaintiff alleged. (AR 30; see AR 49, 634); see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (as amended) (in assessing credibility, ALJ may consider "inconsistencies either in [plaintiff's] testimony or between his testimony and his conduct" and "his work record"). The ALJ further noted that although Plaintiff reported mental-health impairments related to perceived harassment by a supervisor beginning in mid-2009, he did not seek workers' compensation based on those impairments until he anticipated

10

being terminated, in January 2010.  (AR 30; <u>see</u> AR 637; <u>see also</u>
AR 54 (Plaintiff testifying that his high level of anxiety began
"right before January of 2010"); <u>see also</u> AR 208 (Plaintiff
alleging in DIB application onset date of January 16, 2010).)
That Plaintiff claimed disability in the face of suspension and
possible termination was a valid basis for the ALJ to discount
his credibility.  <u>Cf.</u> <u>Bruton v. Massanari</u>, 268 F.3d 824, 828 (9th
Cir. 2001) (as amended) (finding fact that claimant left work
because he was laid off, not because he was injured, to be
sufficient reason for discrediting pain testimony).

Further, the ALJ noted that Plaintiff's claims of disabling
mental and physical impairments were undermined by his "somewhat
normal level of daily activity."  (AR 29.)  As the ALJ noted,
Plaintiff stated that he drove occasionally, managed his own
personal care, prepared simple meals, fed his dog, walked in the
neighborhood, did limited chores, and window shopped.  (AR 28; AR
34 (ALJ noting that Plaintiff's neighborhood walks undermined
claims that he could not walk more than 50 feet); AR 28 (noting
that Plaintiff apparently told doctor in April 2011 that he had
recently gone on "one-hour hike," after which he suffered some
chest pains (citing AR 816)); <u>see</u> AR 264, 267.)  Plaintiff's wife
confirmed that although he had trouble sleeping, experienced
fatigue, and had significant physical limitations, he regularly
went to doctor's appointments, picked the children up from
school, walked the neighborhood, prepared sandwiches and
microwaved meals, drove, and shopped in stores.  (AR 29; <u>see</u> AR
252, 254, 256.)  Both Plaintiff and his wife also stated that he
used the computer one or two hours a day, although Plaintiff

later testified that he did not.  (See AR 52, 256, 268; see also
AR 869-70 (in Mar. 2012, noting that Plaintiff reported he spent
much of day watching television or playing computer games).)

     Although Plaintiff is correct that he need not "vegetate in
a dark room" to be eligible for benefits (J. Stip. at 32 (quoting
Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (internal
quotation marks omitted))), here, the ALJ properly found that
Plaintiff's activities belied his claims of disabling pain and
mental-health impairments, see Tommasetti, 533 F.3d at 1039
(noting that "ALJ may consider many factors in weighing a
claimant's credibility, including . . . [his] daily activities");
Molina, 674 F.3d at 1113 (finding that claimant's activities,
"including walking her two grandchildren to and from school,
attending church, shopping, and taking walks," undermined her
claims of debilitating panic attacks).  Many of Plaintiff's daily
activities are transferrable to the workplace, and Plaintiff
himself confirmed that he would be able to do clerical work.  (AR
57, 592, 595); see Bunnell v. Sullivan, 947 F.2d 341, 346 (9th
Cir. 1991) ("[I]f the claimant engages in numerous daily
activities involving skills that could be transferred to the
workplace, an adjudicator may discredit the claimant's
allegations upon making specific findings relating to the
claimant's daily activities.").

     As noted, the ALJ found Plaintiff's alleged physical and
mental limitations to be "far in excess of the objective medical
and other evidence."  (AR 29.)  She found that Plaintiff's
allegation that he was unable to walk more than 50 feet was
"clearly" "not supported by the objective medical evidence."  (AR

30; see also AR 34 (ALJ noting that Plaintiff's neighborhood walks belied claim he could walk only 50 feet), 28 (noting Plaintiff's apparent hiking activity and subsequent denial of same).)  The ALJ pointed to the August 9, 2010 cardiology evaluation, at which Plaintiff reported no symptoms of brachycardia.  (AR 30; see AR 662.)  She also noted an August 17, 2010 cardiac stress test, which revealed Plaintiff's "excellent exercise capacity" and very low probability of myocardial ischemia.  (AR 30; AR 28 (ALJ emphasizing "9-minute treadmill stress test, where the claimant walked at 3.4 miles per hour on a 14% grade, with a workload of 10.1 METS"); see AR 767-68.)  The ALJ noted that although Plaintiff alleged that he suffered from chest pain, his pneumothorax had not recurred since 2008, and March 12, 2010 chest imagery showed that he was asymptomatic.  (AR 30; see AR 522, 526.)  Although once the claimant produces objective medical evidence of an underlying impairment, the ALJ may not reject his subjective complaints based solely on a lack of objective medical evidence to fully corroborate their alleged severity, here the ALJ properly cited medical and other evidence that Plaintiff was able to engage in activities inconsistent with his claims of disability.  Bunnell, 947 F.2d at 345-46; see also Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (noting that ALJ may disregard claimant's self-serving statements if unsupported by objective evidence).

The ALJ also gave "some slight weight" to Plaintiff's "apparent lack of discomfort during the [hourlong] hearing," which she found was not "a conclusive indicator" of Plaintiff's daily pain but tended to undermine his allegations.  (AR 29; see

also AR 45, 80 (showing that hearing began at 1:24 p.m. and ended at 2:25 p.m.).)  Such observations may serve as one factor in an ALJ's consideration of the credibility of a plaintiff's allegations.  See Drouin, 966 F.2d at 1259 (affirming credibility finding when ALJ's observation that at the hearing "there was no indication that claimant was suffering pain" "was only one factor taken into consideration"); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (noting that ALJ may rely on his observations as part of overall credibility determination).

This Court is limited to determining whether the ALJ properly identified reasons for discrediting Plaintiff's credibility.  Smolen, 80 F.3d at 1284.  The inconsistencies between Plaintiff's allegations, on the one hand, and his reasonably normal level of activity and interaction and the objective evidence of record, on the other, were proper and sufficiently specific bases for discounting his claims of disabling symptoms, and the ALJ's reasoning was clear and convincing.  See Tommasetti, 533 F.3d at 1039-40; Houghton v. Comm'r Soc. Sec. Admin., 493 F. App'x 843, 845 (9th Cir. 2012). Because the ALJ's findings were supported by substantial evidence, this Court may not engage in second-guessing.  See Thomas, 278 F.3d at 959.

Remand is not warranted on this ground.

B.   <u>The ALJ Did Not Err in Assessing the Evidence of</u>
<u>Physical Impairments</u>

Plaintiff contends that in assessing his physical limitations, the ALJ erred in discounting the opinions of treating doctor Shawn Allen and examining doctor James Vevaina and favoring the opinions of state-agency physicians R. Halpern and E. Christian.  (J. Stip. at 11; <u>see also</u> <u>id.</u> at 5-12, 15-18.)

1.   <u>Applicable law</u>

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff.  <u>Lester</u>, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician.  <u>Id.</u>

This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant.  <u>Smolen</u>, 80 F.3d at 1285.  If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight.  § 404.1527(c)(2).  If a treating physician's opinion is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the

1  record as a whole, the doctor's area of specialization, and other

2  factors.  § 404.1527(c)(2)-(6).

3      When a treating doctor's opinion is not contradicted by some

4  evidence in the record, it may be rejected only for "clear and

5  convincing" reasons.  See Carmickle v. Comm'r, Soc. Sec. Admin.,

6  533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at

7  830-31).  When a treating physician's opinion is contradicted,

8  the ALJ must provide only "specific and legitimate reasons" for

9  discounting it.  Id.  "The ALJ need not," however, "accept the

10  opinion of any physician, including a treating physician, if that

11  opinion is brief, conclusory, and inadequately supported by

12  clinical findings."  Thomas, 278 F.3d at 957; accord Tonapetyan,

13  242 F.3d at 1149.

14          2.  Analysis

15      Contrary to Plaintiff's contention, the ALJ gave specific

16  and legitimate reasons for discounting the medical opinions of

17  Drs. Allen and Vevaina.

18      As Plaintiff notes, the ALJ accorded some weight to Dr.

19  Allen's treatment records but little weight to his February 7,

20  2012 Pulmonary Residual Functional Capacity Questionnaire.  (J.

21  Stip. at 6; AR 34.)  In the questionnaire, Dr. Allen indicated

22  that Plaintiff suffered shortness of breath, chest tightness,

23  wheezing, fatigue, chest pain, and coughing.  (AR 833.)  He

24  opined that Plaintiff could stand for 45 minutes at a time but

25  also seemed to indicate that he could not stand at all or,

26  possibly, that he could never stand for as much as four hours in

27

28

an eight-hour day.[5]  (AR 835; <u>see</u> AR 33 (ALJ noting internal
inconsistencies of questionnaire).)  Dr. Allen further opined
that Plaintiff could sit for at least six hours in an eight-hour
workday but would require unscheduled breaks; could never lift
even less than 10 pounds; and should avoid any exposure to
extreme temperatures, humidity, and pulmonary irritants.  (AR
835-36.)  Dr. Allen opined that Plaintiff would miss more than
three days of work a month and had "significant concentration and
physical limitations."  (AR 836.)

As an initial matter, the ALJ's RFC was in some ways
consistent with Dr. Allen's findings.  Like Dr. Allen, the ALJ
found that Plaintiff could sit for six hours in an eight-hour
workday but that he would need to "alternate positions at one-
hour intervals from one to five minutes."  (AR 26.)  Both found
that Plaintiff had a significant restriction on standing and
walking.  (<u>Id.</u>)

As to the differences between Dr. Allen's findings and the
ALJ's, the ALJ found that the credibility of his opinion as
expressed in the questionnaire was undermined both by its
internal inconsistencies and by the fact that it appeared to
reflect Plaintiff's subjective complaints, which the ALJ found to
be only partly credible.  (AR 33; <u>see</u> <u>supra</u> Section V.A.)  These
were valid bases for discounting the questionnaire.  <u>See</u> <u>Matney</u>

---

[5] In response to a question asking "how long your patient can
. . . stand/walk total in an 8 hour working day," Dr. Allen left
blank the "less than 2 hours," "about 2 hours," and "at least 6
hours" choices and wrote "none" next to "about 4 hours."  (AR 835.)
Plaintiff's argument that it is actually ambiguous what Dr. Allen
wrote (J. Stip. at 17-18) is not well taken, as the word is quite
clear.

ex rel. Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992)
(finding that "inconsistencies and ambiguities" in doctor's
opinion were specific and legitimate reasons for rejecting it);
Houghton, 493 F. App'x at 845 (ALJ's finding that doctors'
opinions were "internally inconsistent" constituted specific and
legitimate basis for discounting them); Fair v. Bowen, 885 F.2d
597, 605 (9th Cir. 1989) (finding that ALJ properly disregarded
physician's opinion premised on claimant's subjective complaints
that ALJ had already discounted).

Moreover, as the ALJ noted, Dr. Allen's own treatment notes
did not support a finding that Plaintiff was disabled by his
pulmonary impairments.  The ALJ noted that although Dr. Allen's
notes reflected Plaintiff's complaints of continuing depression,
his physical symptoms appeared to have improved.  (AR 30.)  For
instance, Plaintiff reported in June 2010 that he suffered only
intermittent muscle spasms and in August 2011 that his symptoms
were "stable," although his depression had not improved.  (AR 30;
see AR 873-74.)  The ALJ further noted that although Plaintiff's
March 2011 treatment record indicated that he would be off work
through December 31, 2011, when he was scheduled to have surgery
to address his sleep apnea (see AR 877), at that point "the
record [did] not support a need to keep the claimant off work as
his post surgical symptoms had already resolved" (AR 30).

The ALJ further noted that Dr. Allen's report of disabling
pulmonary symptoms and chest pain was contradicted by other
evidence in the record.  For instance, November 22, 2011
pulmonary-function testing revealed only a "moderate" airflow
limitation, normal diffusing capacity, and a flow-volume loop

18

consistent with "some obstruction."[6]  (AR 30; see AR 820-21.)
The ALJ noted an August 17, 2010 stress echocardiogram showing
that Plaintiff had "excellent exercise capacity."[7]  (AR 30; see
AR 767.)  In January 2011, Dr. Roland Zotolow, a specialist in
internal medicine, found upon examination that although
Plaintiff's impairments could reasonably cause him the symptoms
of which he complained, the only work-related restriction
necessary was a preclusion of "heavy lifting and heavy work."
(AR 802, 804.)  In April 2011, Dr. Shahriyar Tavakoli, a
specialist who treated Plaintiff for spontaneous pneumothorax and
sleep apnea (see AR 522, 524), reported to Dr. Allen that a CT
scan showed scattered bullae but no recurrent pneumothorax and
that "[o]therwise, the patient is asymptomatic" (AR 522; see AR
526).

---

[6] The ALJ also found that the specific values reported on
Plaintiff's pulmonary function report "indicated relatively good
levels of functioning."  (AR 31; see AR 821.)  Although she may
have been correct, the assessment of Plaintiff's test results
reflects no such finding, and as Plaintiff noted (J. Stip. at 10),
the ALJ cited no basis for her finding.  Nonetheless, because she
cited other medical evidence contradicting Dr. Allen's finding of
disabling pulmonary symptoms, any error was harmless.  See Stout v.
Comm'r of Soc. Sec., 454 F.3d 1050, 1055 (9th Cir. 2006) (error
harmless when inconsequential to ultimate nondisability
determination).

[7] Although Plaintiff objects to the ALJ's reliance on the
results of a cardiac stress test because it "does not pertain to
pulmonary function" (J. Stip. at 16), Plaintiff's strong
performance on a test that required him to walk on a treadmill
whose speed and incline were consistently increased certainly
contradicts allegations that his pulmonary function made him unable
to walk more than a city block (compare AR 767 with AR 53-54
(Plaintiff testifying he "[d]efinitely" cannot walk a couple of
city blocks), 269 (Plaintiff stating he cannot walk more than 50
feet without rest), 835 (Dr. Allen stating that Plaintiff could
walk only a city block)).

Notably, in discounting Plaintiff's allegations of disabling physical limitations, the ALJ repeatedly noted Plaintiff's own and his wife's reports of his "somewhat normal level of daily activity and interaction." (AR 29; see supra Section V.A.) As noted, in response to the ALJ's inquiry as to why he couldn't perform sedentary work, Plaintiff stated that "I just don't like to sit still." (AR 57; AR 595 (Plaintiff reporting he was capable of clerical work but could not sit long enough to complete it); see also AR 54 (Plaintiff testifying he had no sitting limitation), 592 (Plaintiff sat calmly through 40-minute evaluation), 28 (Plaintiff sat comfortably through hourlong hearing).) That Plaintiff's admitted capabilities and his testimony about his limitations were inconsistent with Dr. Allen's severe findings was another reason to discount Dr. Allen's opinion. See Magallanes v. Bowen, 881 F.2d 747, 751-53 (9th Cir. 1989) (finding that ALJ properly rejected treating physician's opinion based in part "on the claimant's own testimony").

That Dr. Allen's February 2012 opinion was supported neither by his own treatment notes nor by the record as a whole was a valid basis to give it less weight. Houghton, 493 F. App'x at 845 (ALJ's finding that doctors' opinions were "internally inconsistent, unsupported by their own treatment records or clinical findings, [and] inconsistent with the record as a whole" constituted specific and legitimate bases for discounting them).

Plaintiff contends that the ALJ erred in according no more than "lesser weight" to examining doctor Vevaina's opinion that Plaintiff should be limited to lifting only five pounds. (J.

Stip. at 8; see AR 30, 34, 705.)  As the ALJ noted, Dr. Vevaina indicated both that Plaintiff was limited to lifting five pounds and that he was precluded from "heavy" lifting (AR 705) – seemingly incongruous recommendations, even granting that Dr. Vevaina may not have intended "heavy" to equate to the 50-to-100-pounds meaning that word has in the Social Security regulations. See § 404.1567(d).  In any event, Dr. Vevaina is unlikely to have used the term "heavy" to indicate 10 pounds or less, the lifting limitation found by the ALJ.  (See AR 26.)

Nor does the five-pound lifting restriction appear consistent with Dr. Vevaina's other findings.  As the ALJ noted, "Dr. Vevaina opined that Plaintiff would need future medical care only if he develops another pneumothorax on the job." (AR 30; see AR 705.)  A March 12, 2010 exam revealed no recurrent pneumothorax and that Plaintiff was otherwise asymptomatic.  (AR 30; see AR 522, 526.)  Particularly given that Dr. Vevaina attributed only 25% of Plaintiff's pneumothorax to his underlying lung disease, finding "heavy" lifting to be primarily responsible, the ALJ's finding that Plaintiff should be limited to light work and lifting no more than 10 pounds adequately accounted for Plaintiff's pulmonary limitations.[8]  (AR 704; see also AR 703 ("The cause of this patient's recurrent pneumothorax is lifting heavy objects at work."); but see AR 51 (Plaintiff

_____

[8] Although the ALJ found that Plaintiff could perform light work with additional limitations (AR 26-27), all three jobs that she found Plaintiff could perform were sedentary (see AR 35, 63-65; DOT 713.687-018, 1991 WL 679271 (final assembler), DOT 739.687-182, 1991 WL 680217 (table worker), DOT 715.684-026, 1991 WL 679344 (bench hand)).

1  testifying that he experienced chest pain only from bending or

2  standing too long)); see Matney, 981 F.2d at 1020.[9]

3       Nor did the ALJ err in giving "some weight" to the opinions

4  of the state-agency physicians. (AR 34.)  Plaintiff contends

5  that Dr. Halpern provided "without explanation" an opinion that

6  Plaintiff could stand or walk at least two hours in an eight-hour

7  day, sit for six hours in an eight-hour day, and lift less than

8  10 pounds frequently and 10 pounds occasionally. (J. Stip. at 7

9  (citing AR 586).)  In fact, however, Dr. Halpern explicitly noted

10 the records he had reviewed in reaching that conclusion (see AR

11 586-87), and Dr. Christian affirmed that finding upon

12 consideration of additional evidence (AR 780-81).  Moreover,

13 Plaintiff's suggestion that the state-agency opinions are not

14 reliable because Dr. Halpern's initial determination was made

15 without medical-opinion evidence and neither state-agency

16 physician necessarily reviewed his pulmonary-function results is

17 without merit. (J. Stip. at 7.)  The ALJ considered their

18 assessments in the context of the entire record and found them to

19 be entitled to "[s]ome weight." (AR 34); see SSR 96-6P, 1996 WL

20 374180, at *2 (July 2, 1996) (state-agency physicians are highly

21

22      [9] The ALJ also found Dr. Vevaina's lifting recommendation to
   be  inconsistent  with  Plaintiff's  cardiac  stress  test,  which
23 "reveals much greater exertional ability" than that suggested by a
   limitation  to  lifting  only  five  pounds.  (AR 34.)  There is no
24 indication,  however,  that  Dr. Vevaina's  lifting  restriction  was
   related  to  exertion.  (See generally AR 695-710; see also AR 708
25 (noting "misconception" that pneumothorax occurs during exercise).)
   Because  the  ALJ  gave  other  specific  and  legitimate  reasons  for
26 discounting Dr. Vevaina's opinion, however, any error was harmless.
   See Stout, 454 F.3d at 1055 (error harmless when inconsequential to
27 ultimate nondisability determination).

28

qualified and expert in evaluation of medical issues under the Act).[10]   The ALJ was entitled to do so.

Remand is not warranted on this basis.

C.   The ALJ Did Not Err in Assessing the Evidence of Mental Impairments

Plaintiff contends that in making findings on his mental limitations, the ALJ erred in assessing the opinion of Daniel Watson, who had a Ph.D. in psychology.[11]   (J. Stip. at 24.)   As a licensed psychologist, Dr. Watson was an acceptable medical source.   § 404.1513(a)(2); see Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996), superseded by regulation on other grounds as stated in Hudson v. Astrue, No. CV-11-0025-CI, 2012 WL 5328786, at *4 n.4 (W.D. Wash. Oct. 29, 2012); Lester, 81 F.3d at 830 n.7.

Contrary to Plaintiff's contentions, the ALJ gave specific

[10] The ALJ discounted the opinions of Plaintiff's doctors that he was disabled for purposes of workers' compensation.   She accurately noted that a finding of disability for purposes of workers' compensation does not necessarily lead to a finding of disability for purposes of DIB.   (AR 29.)   To the extent the ALJ discounted doctors' findings and opinions as not "truly objective" because they were "prepared in the context of an adversarial worker[s'] compensation claim," however, she may have erred.   (AR 29); see Sinohui v. Astrue, No. EDCV 10-908 RNB, 2011 WL 1042333, at *2 (C.D. Cal. Mar. 18, 2011); see also Lester, 81 F.3d at 832 (holding that ALJ erred in rejecting physician's reports "clearly obtained by the claimant's attorney for the purpose of litigation" because "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them").   Because the ALJ gave other specific and legitimate reasons for discounting the opinions of Drs. Allen and Vevaina, however, any error was harmless.   Stout, 454 F.3d at 1055 (error harmless when inconsequential to ultimate nondisability determination).

[11] Although the Commissioner also defends the ALJ's treatment of Dr. Marcia Lamm's opinion, Plaintiff does not appear to allege error in that assessment.   (See J. Stip. at 21, 24.)

and legitimate reasons for discounting Dr. Watson's opinion.  As
she did in assessing Plaintiff's physical limitations, the ALJ
relied significantly on Plaintiff's own and his wife's statements
about his activities and limitations in discounting his
allegations of a disabling mental-health impairment.

The ALJ found that Plaintiff suffered only "mild"
restrictions in activities of daily living and social
functioning.  (AR 25.)  She noted that although Dr. Watson opined
that Plaintiff suffered marked limitation in these activities, he
and his wife reported that his daily activities included using a
computer, running short errands, browsing at stores, picking up
his children with his wife, watching TV, and walking in the
neighborhood.  (Id.)  The ALJ found that these statements
undermined Dr. Watson's opinion that Plaintiff suffered marked
limitations in activities of daily living.[12]  (Id.; see AR 869-
70.)  The ALJ similarly found that Dr. Watson's opinion that
Plaintiff would suffer "marked" limitations in dealing with
coworkers and supervisors when under pressure or stress was
inconsistent with Plaintiff's statements that he gets along with
authority figures and goes on small errands.  (AR 25; see AR 309,
870.)  Further, to the extent Dr. Watson's opinion was based on
Plaintiff's past work experience, the ALJ noted, Plaintiff had
reported issues with only one supervisor, who he claimed harassed

_____

[12]  Although the ALJ refers to "marked" limitations in
activities of daily living, Dr. Watson did not use that term.
(See AR 869-70.)  His assessment that Plaintiff "has come to rely
on his wife to handle most of the daily responsibilities" and
"activities around the home" (id.), however, can fairly be
interpreted as a finding of marked limitations.

him (AR 25), which does not translate to an overall inability to relate to supervisors and coworkers (see also AR 33 (ALJ noting that Dr. Watson appeared to have given too much weight to Plaintiff's then-existing employment situation)).

The ALJ found that Plaintiff suffered "moderate" limitations in maintaining concentration, persistence, or pace.  (AR 25; see AR 870.)  She noted that Dr. Watson's opinion that Plaintiff would suffer "marked" limitations with concentration was inconsistent with Plaintiff's own reports that he was capable of a desk job, used the computer for an hour at a time, and watched TV each night before bed.  (AR 26; see AR 264, 268, 592.)  Further, although Plaintiff reported an inability to sit still (AR 57, 595), Dr. Jordan reported that Plaintiff sat calmly throughout his evaluation (AR 595), and the ALJ made a similar finding as to the hourlong hearing (AR 28).  Nor did Dr. Jordan find any evidence that Plaintiff would struggle with detailed and complex work tasks.  (AR 26; see AR 595.)

The ALJ further noted that Dr. Watson himself noted Plaintiff's effectiveness at "defend[ing]" his depression, social awkwardness, and introversion, making them difficult to diagnose, which the ALJ found to indicate that Plaintiff's symptoms were "not readily apparent" to third parties and that he had established coping mechanisms to handle them.  (AR 33; see AR 866.)  She noted that Dr. Watson was alone in diagnosing Plaintiff with personality disorders (AR 33), a fact that is noteworthy given that the multiaxial diagnosis was provided by an unidentified third-party scorer rather than determined by the doctor himself (id.; see AR 727); see also § 404.1513(a) (noting

1  that evidence of medical impairments must be provided by
2  acceptable medical sources).[13]

3      Indeed, as the ALJ noted, treating psychiatrist Robert
4  Marozas reported that Plaintiff responded well to medication and
5  treatment and that his mood was stable.  (AR 30; see AR 719 (on
6  July 15, 2010, Dr. Marozas noting Plaintiff "[d]oing better" with
7  medication" and "more stable"), 718 (on Sept. 17, 2010, noting
8  Plaintiff "[s]tabilizing" and "more stable"), 717 (on Oct. 28,
9  2010, noting Plaintiff "doing better," "more stable," and
10  "sleeping better"), 716 (on Dec. 2, 2010, noting Plaintiff's
11  overall functioning improving), 830 (on Feb. 24, 2011, noting
12  Plaintiff "[d]oing better" despite "some depression" and that
13  overall functioning improving), 829 (on Apr. 21, 2011, reporting
14  Plaintiff "[d]oing well"), 828 (on July 14, 2011, reporting
15  Plaintiff "doing okay" with "some sleep [difficulty]" and
16  improving overall), 827 (on Oct. 6, 2011, adjusting medication to
17  address Plaintiff's feeling of being "too sedated" but noting
18  overall improvement), 826 (on Jan. 5, 2012, noting Plaintiff
19  feeling "stress" about disability application but "doing ok" and
20  improving overall).)

21      That Plaintiff's own statements were inconsistent with the
22  limitations found by Dr. Watson was a valid reason to discount
23  Dr. Watson's opinion, particularly insofar as it depended on
24  Plaintiff's reports, which the ALJ found not entirely credible.

25

26      [13] Although Plaintiff contends without explanation that the
   ALJ's finding that Dr. Watson did not score Plaintiff's diagnostic
27  test was untrue (J. Stip. at 23), Dr. Watson explicitly indicated
   that Plaintiff's test "was returned [to him] . . . from a
28  professional scoring service."  (AR 727.)

1   <u>Fair</u>, 885 F.2d at 605.  Moreover, to the extent Dr. Watson's

2   findings were inconsistent with other medical evidence of record,

3   including the opinions of other mental-health practitioners, the

4   ALJ reasonably discounted Dr. Watson's findings.  <u>Houghton</u>, 493

5   F. App'x at 845.  Finally, because Dr. Watson's reported

6   diagnoses of Plaintiff's mental impairments appeared to be

7   provided by a third party, the ALJ was entitled to give his

8   diagnoses less weight.  <u>See</u> § 404.1513(d); <u>Gomez</u>, 74 F.3d at

9   970-71 (Commissioner permitted "to accord opinions from other

10  sources less weight than opinions from acceptable medical

11  sources").

12      Plaintiff erroneously argues that the ALJ erred in finding

13  that his depression did not meet Listing 12.04.  (<u>See</u> J. Stip. at

14  21 (citing AR 870 (Dr. Watson opining that Plaintiff met Listing

15  12.04)), 24.)  "To meet a listed impairment, a claimant must

16  establish that he or she meets each characteristic of a listed

17  impairment relevant to his or her claim."  <u>Tackett v. Apfel</u>, 180

18  F.3d 1094, 1099 (9th Cir. 1999) (emphasis omitted); <u>accord</u>

19  <u>Reed-Goss v. Astrue</u>, 291 F. App'x 100, 101 (9th Cir. 2008).  For

20  a claimant's depression to meet Listing 12.04, he must establish

21  both "[m]edically documented persistence, either continuous or

22  intermittent," of "[d]epressive syndrome" characterized by at

23  least four of a specified list of symptoms <u>and</u> demonstrate

24  limitations meeting at least two of the "Paragraph B" criteria.

25  20 C.F.R pt. 404, subpt. P, app. 1 § 12.04.  Because the ALJ

26  reasonably found that Plaintiff suffered only mild restrictions

27  in activities of daily living and social functioning, moderate

28  limitations in maintaining concentration, persistence, or pace,

and no extended episodes of decompensation, he did not meet the

Paragraph B criteria for Listing 12.04.  (AR 25.)

Because the ALJ gave specific, legitimate reasons for

discounting Dr. Watson's opinion and findings, remand is not

warranted on this basis.

D.   <u>The ALJ Did Not Err in Relying on the VE's Testimony</u>

Plaintiff contends that the ALJ improperly relied on the

VE's testimony regarding the number of jobs available in the

national and regional economies.  (J. Stip. at 38-39.)  He

contends that because the VE did not cite to one of five sources

listed in § 404.1566(d), the ALJ should not have taken

administrative notice of the jobs data she provided.[14]  (<u>Id.</u>)

Section 404.1566(d) provides that in determining that jobs

exist in significant numbers, the Commissioner "will take

administrative notice of reliable job information available from

various governmental and other publications."  The regulation

then identifies five "example[s]" of potential sources of job

data.  <u>Id.</u>  Plaintiff's emphatic claim that because vocational

experts are "[c]ompletely absent from this list," the

Commissioner cannot take administrative notice of jobs data they

provide is thus unsupported by the text of the statute, which in

any event by its very terms applies only to "publications."  (J.

Stip. at 39); <u>cf. Ridings v. Lane Cnty., Or.</u>, 862 F.2d 231, 234-

35 (9th Cir. 1988) (holding that list in C.F.R. was not exclusive

when composed of examples).  In fact, the statute specifically

provides that VEs may be consulted in "determining . . . whether

_____

[14] Although Plaintiff cites § 416.966(d) (J. Stip. at 38-39),
it is § 404.1566(d) that applies to requests for DIB.

[a claimant's] work skills can be used in other work and the specific occupations in which they can be used." § 404.1566(e).

Bayliss v. Barnhart confirmed that an ALJ may rely on a VE's testimony regarding the number of jobs available in the economy:

> [T]he ALJ's reliance on the VE's testimony regarding the number of relevant jobs in the national economy was warranted.  <u>An ALJ may take administrative notice of any reliable job information, including information provided by a VE.</u>  A VE's recognized expertise provides the necessary foundation for his or her testimony.  Thus, no additional foundation is required.

427 F.3d 1211, 1218 (9th Cir. 2005) (emphasis added, citation and footnote omitted); see also Johnson v. Shalala, 60 F.3d 1428, 1435-36 (9th Cir. 1995) (ALJ may take administrative notice of VE testimony addressing number of available jobs); Tackett, 180 F.3d at 1101 (noting that at step five, VE can testify as to "what jobs the claimant, given his or her residual functional capacity, would be able to do" and "the availability of such jobs in the national economy"); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 578 (9th Cir. 1988) (noting that VE's role is to identify jobs claimant can still perform and whether they exist in sufficient numbers).  This Court is bound to follow a published Ninth Circuit decision.

Plaintiff proffers for the first time information from the U.S. Census Bureau's "County Business Patterns" and asserts that the jobs data therein contradict the VE's testimony.  (J. Stip. at 40-42 & Ex. 1.)  Plaintiff offers no explanation for his failure to challenge the jobs data before the ALJ or even the

Appeals Council – an omission that is particularly noteworthy given that his counsel questioned the VE at length, including about the number of available jobs in the identified positions. (See AR 67-71); cf. Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 527 (9th Cir. 2014) (in rejecting challenge to ALJ's reliance on VE's testimony, noting that plaintiff failed to challenge testimony regarding job numbers).  Nor does he offer any authority indicating that an ALJ is required to inquire whether the VE's job-numbers testimony is consistent with County Business Patterns.  See Kennedy v. Colvin, No. 13CV1632-WQH-KSC, 2014 WL 3695466, at *3 (S.D. Cal. July 22, 2014) (rejecting claim nearly identical to Plaintiff's).

Further, Plaintiff provides no expert analysis of the data tables in Exhibit 1. He attempts to translate the DOT codes for the jobs discussed by the VE into industry listings coded according to the North American Industry Classification System. (See J. Stip. at 40-42.)  For instance, Plaintiff asserts that the position of final assembler (DOT 713.687-018, 1991 WL 679271), which the VE testified accounted for approximately 32,000 jobs in California (AR 63), "exists in the optical goods industry," then points to the smaller number of jobs available within that industry as proof that the VE overestimated the jobs available for final assemblers (see J. Stip. at 40-41).  But the jobs numbers provided by the VE do not come from the DOT, nor do they correlate to the narrow job descriptions therein.  See Kennedy, 2014 WL 3695466, at *20 (noting that "the DOT provides only job descriptions and specifications, and not the actual hard numbers regarding the national and regional availability of the

same"). Rather, as is clear from the VE's testimony, she estimated job availability for similar positions across a number of industries, making Plaintiff's attempted industry-specific comparison inapplicable. (See AR 69 (noting, in assessing demands that might require erosion of job numbers, that three jobs identified arose in different industries).) Moreover, the VE was particularly qualified to do so, having "done a lot of job analyses in manufacturing environments," which allowed her to assess Plaintiff's capacity for working in specific manufacturing environments. (AR 71.) Her "expertise alone provided the basis for [her] testimony." Olquin v. Astrue, No. EDCV 11-1802-OP, 2012 WL 4711775, at *5 (C.D. Cal. Oct. 1, 2012); see Bayliss, 427 F.3d at 1218; Johnson, 60 F.3d at 1435.

Finally, even assuming that the data now presented by Plaintiff constitute substantial evidence, "the data, at best, would support an alternative finding regarding the number of job[s] available for plaintiff in the economy." Valenzuela v. Colvin, No. CV 12-0754-MAN, 2013 WL 2285232, at *4 (C.D. Cal. May 23, 2013); accord Cardone v. Colvin, No. ED CV 13-1197-PLA, 2014 WL 1516537, at *6 (C.D. Cal. Apr. 18, 2014). When evidence "is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954.

**VI.   CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[15] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: January 7, 2015                    _____

                                          JEAN ROSENBLUTH
                                          U.S. Magistrate Judge

---

[15] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."